**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| **EX REL. JAMES OSBORNE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **HOMECARE PRODUCTS,** | § | **SA-06-CV-0746 NN** |
| **INCORPORATED d/b/a EZ ACCESS,** | § | |
| **DON EVERARD,** | § | |
| **DEANNE SONDVOLD,** | § | |
| **GELEDA EVERARD,** | § | |
| **BRIAN CLARK and** | § | |
| **AMERICAN ACCESS, INC.,** | § | |
| | § | |
| **Defendants.** | § | |

**ORDER GRANTING SUMMARY JUDGMENT AND**
**GIVING NOTICE OF SUA SPONTE CONSIDERATION OF SUMMARY JUDGMENT**

This order addresses the motion for summary judgment[1] filed by defendants Homecare

Products, Don Everard, Geleda Everald, and Deanne Sondvold (together, Homecare).  After

considering the motion, I have determined that Homecare is entitled to summary judgment on all

claims.  In addition, I have determined that defendants Brian Clark and American Access Inc. are

entitled to summary judgment for the same reasons entitling Homecare to summary judgment.

Consequently, this order provides notice of the court's sua sponte consideration of summary

judgment in favor of those defendants.

**Background and Nature of the Case**

Homecare—doing business as EZ Access—specializes in wheelchair ramps and other

---

[1]Docket entry # 49.

products designed to provide mobility and accessibility for wheelchair users.  Don Everard, Geleda Everald, and Deanne Sondvold own Homecare.  The Veterans Administration (VA) contracts with Homecare to provide residential wheelchair ramps for disabled veterans.

Assistive Technology Fabricators also specializes in products designed to provide mobility and accessibility.  Plaintiff James Osborne is the company's General Manager.  Osborne brought this qui tam action under the False Claims Act, alleging that Homecare made false and fraudulent claims to the United States Government by misrepresenting to the VA that its ramps comply with the Americans with Disabilities Act (ADA).  Osborne brought the same claims against Clark and American Access.

Homecare moved for summary judgment.[2]  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that [Homecare] is entitled to judgment as a matter of law."[3]  Osborne did not file a response to Homecare's motion for the reasons discussed in my order denying Osborne's motion for an extension of time.  I did, however, consider the information Osborne sought to present, out of an abundance of caution and to explain why Osborne's  proposed summary-judgment evidence would not raise a fact question precluding summary judgment.  I have authority to resolve the motion for summary judgment because the parties consented to my jurisdiction and because this case involves a question of federal law.[4]

---

[2]Docket entry # 49.

[3]Fed. R. Civ. P. 56(c).

[4]*See* 28 U.S.C. § 1331.

**Homecare's Jurisdictional Argument**

Homecare asks the court to dismiss this case for lack of jurisdiction.  Homecare maintains the court lacks jurisdiction because Osborne's claim is based on a public disclosure and because Osborne is not the original source of the information underlying the allegations.[5]  Homecare explained that Osborne filed a bid protest when the VA awarded a contract to Homecare, basing the protest on publicly-disclosed information and making the same complaints alleged here. Because it contends the public was saturated with information that could have exposed the alleged fraudulent transactions, Homecare argues that this case should be dismissed for lack of jurisdiction.

"The qui tam provision of the False Claims Act (FCA or Act), 31 U.S.C. § 3730(b), permits, in certain circumstances, suits by private parties on behalf of the United States against anyone submitting a false claim to the Government."[6]  "The [Act, however,] deprives a district court of jurisdiction over any qui tam action that is based upon allegations or transactions already disclosed in certain public fora, unless the relator is the original source of the information underlying the action."[7]  The following provision creates this "public disclosure" jurisdictional bar:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.[8]

Under this language, a district court lacks jurisdiction if:

---

[5]Docket entry # 49, § IV.C.

[6]*Hughes Aircraft Co. v. United States*, 520 U.S. 939, 941 (1997).

[7]*A-1 Ambulance Serv. v. California*, 202 F.3d 1238, 1243 (9th Cir. 2000).

[8]31 U.S.C. 3730(e)(4)(A) (emphasis added).

(1) there has been a "public disclosure"

(2) of "allegations or transactions"

(3) in a "criminal, civil, or administrative hearing, *in a* congressional, administrative, or *Government Accounting Office report, hearing, audit, or investigation*, or from the news media"

(4) and the relator/plaintiff's action is "based upon" that public disclosure.[9]

The language italicized above is dispositive of Homecare's argument.

> <u>Whether there has been a public disclosure of allegations or transactions</u>.  To show that there has been a public disclosure of allegations or transactions—the first two elements of the jurisdictional bar—Homecare first presented summary-judgment evidence that Osborne's allegations are based on information available in the public domain.  Homecare compared photos used in Osborne's complaint with photos posted on Homecare's website—www.ezaccess.com. The complaint uses illustrations obtained from www.ezaccess.com to explain why EZ Access's wheelchair ramps (Homecare's wheelchair ramps) fail to meet VA specifications for contracted wheelchair ramps.[10]  The complaint states that the illustrations were obtained from a printable brochure, downloadable from a Homecare website.[11]  The complaint also compares EZ Access's ramps with illustrations reflecting requirements for wheelchair ramps from the ADA Accessibility Guidelines for Buildings and Facilities (ADAAG) to explain why EZ Access's wheelchair ramps fail to meet ADA requirements for wheelchair ramps.[12]  The illustrations are posted on the ADA

---

[9]*Lindenthal v. General Dynamics Corp.*, 61 F.3d 1402, 1409 (9th Cir. 1995).

[10]Docket entry # 43, ¶¶ 43, 53.

[11]Docket entry # 43, p. 14, n.1 7; *see id.* at p. 18, n.2.

[12]Docket entry # 43, pp. 17 & 20.

Accessibility Guidelines Homepage— http://www.access-board.gov/adaag/about.  The

comparisons between the illustrations form the basis of Osborne's allegations that Homecare

fraudulently represented that its ramps meet the VA's specifications for patient wheelchair ramps

as well as the ADA's requirements for wheelchair ramps.  Because the illustrations are available in

the public domain, and because Osborne's allegations are based on the illustrations, Homecare's

comparison evidence shows that the information supporting Osborne's allegations is publicly

disclosed.

Homecare also presented an affidavit by Judson Branch—Homecare's National Accounts

Manager—to show that there has been a "public disclosure" of allegations or transactions.[13]

Branch attested that Osborne lodged a bid protest with the Government Accountability Office

(GAO) after the VA awarded Homecare a contract for wheelchair ramps.  Branch attached a copy

of the bid protest to his affidavit.[14]  In the bid protest, Osborne—on behalf of Assistive Technology

Fabricators—asserted the following: (1) "Homecare has delivered thousands of ramps [sic] systems

that have not met the design specifications of ADA guideline compliance."[15] (2)  "However,

Homecare did state to the VA that it's [sic] product met ADA specification and even delivered

invoices that it presented for payment to [the VA] that warranted the product to be ADA

compliant."[16]  (3) "Homecare has committed fraud against the VA."[17]  These allegations complain

---

[13]Docket entry # 49, exh. 1.

[14]Docket entry # 49, exh. 1, attach. 1.

[15]Docket entry # 49, exh. 1, attach. 1, p. 20.

[16]Docket entry # 49, exh. 1, attach. 1, p. 20.

[17]Docket entry # 49, exh. 1, attach. 1, p. 20.

about Homecare's transactions with the VA and mirror the allegations in Osborne's complaint.[18] Osborne supported his allegations with specifications from the VA's handbook for ramp acquisitions, detailed discussions about the ADA's requirements for ramps, comparisons purportedly showing how and why Homecare's ramps do not meet the ADA requirements, and one of the ADA illustrations included in Osborne's complaint.  As an unsealed document alleging fraudulent actions using publicly-disclosed information, the bid protest constitutes a public disclosure of allegations or transactions.  Because the information discussed in the bid protest is publicly available and because the bid protest was filed with the GAO, Homecare's summary-judgment evidence shows that there has been a public disclosure of allegations or transactions.

　　　　Whether the public disclosure was made in a GAO report, hearing, audit, or investigation. Although  Homecare's summary-judgment evidence shows that there has been a public disclosure of allegations or transactions—in the form of a bid protest and other publicly-disclosed information—the evidence does not show that the public disclosure was made in a GAO report, hearing, audit, or investigation—the third element of the jurisdictional bar.  Neither Branch's affidavit nor the bid protest show that the GAO investigated Osborne's allegations or Homecare's transactions, audited Homecare's transactions, conducted a hearing on Osborne's allegations, or

---

[18]Osborne's complaint asserts the following: (1) "EZ Access fraudulently sought, and obtained, orders based on bids knowing that they were not providing ADA complaint [sic] ramp systems as required by the various contracts entered into by the V.A. and with EZ Access."  See docket entry # 43, ¶ 43.  (2) "EZ Access has now become so comfortable selling non-ADA complaint [sic], non-FSS ramp products or services that they now are so brazen as to present invoices to the government without a single FSS product or service on the invoice using FSS BPA, RFQ, or FSS sole source acquisition procedures."  *See id*. at ¶ 69.  (3) "In connection with the application and receipt of federal VA contracts grants, Defendants (a) knowingly presented, and cause to be presented, to an officer and employee of the United States Government false and fraudulent claims for payments and approval . . . ."  *See id*. at ¶ 2.

6

prepared a report in response to Osborne's report.  Thus, Homecare presented no evidence of the

third element of the jurisdictional bar—"in a . . . Government Accounting Office report, hearing,

audit, or investigation . . ."[19]  Consequently, Homecare's summary judgment evidence does not

show that the public disclosure jurisdictional bar applies.  Homecare is not entitled to summary-

judgment dismissal based on its jurisdictional argument.

### Homecare's Argument that No Evidence Exists of a False Claim

Osborne alleges that Homecare has engaged in a continuous practice of the following:

(a) knowingly presenting, and causing to be presented, to an officer and employee
of the United States Government, *false and fraudulent claim* for payment and
approval; (b) knowingly making, using, and causing to be made and used, false
records and statements to get *false and fraudulent claims* paid and approved by the
Government, and conspiring to defraud the Government by getting *false and
fraudulent claims* allowed or paid.[20]

These claims are based on the same premise—that the VA contracted for ADA-compliant

wheelchair ramps.[21]  This premise is material to Osborne's claims because Homecare would not be

entitled to payment for ramps that do not comply with the ADA guidelines if the VA contracted for

ADA-compliant ramps.  According to Osborne, Homecare misrepresented the specifications of its

ramps to gain a bidding advantage in VA contracts.[22]  Osborne maintains that Homecare sold the

VA at least 4,000 wheelchair ramps based on a misrepresentation that the ramps are ADA-

compliant.[23]  Osborne complains that Homecare enhances its profit margins by selling and

---

[19]31 U.S.C. § 3730(e)(4)(A).

[20]Docket entry # 43, p. 27, ¶ 2 (emphasis added).

[21]*See id.* at p. 12 ¶¶ 40-42.

[22]*See id.* at ¶ 40.

[23]*See id*. p. 6, at ¶ 19.

installing products that do not meet the requirements contracted for by the VA.[24]  Homecare

maintains that it is entitled to summary judgment on Osborne's claims because no evidence exists

of a false or fraudulent claim because the VA does not require residential wheelchair ramps to

comply with the ADA and Homecare provided ramps that complied with the VA's requirements.

> The Act provides for liability for any person who does the following:
>
> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States *a false or fraudulent claim* for payment or approval;
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get *a false or fraudulent claim* paid or approved by the Government; [or]
>
> (3) conspires to defraud the Government by getting *a false or fraudulent claim* allowed or paid. . . .[25]

These circumstances require the relator/plaintiff to prove that the defendant made a false or

fraudulent claim.

> Statements or conduct make a claim false only if they are material to the defendants entitlement to the money or property claimed. . . . A claim may be "false" because it contains a false statement that bears on the claimant's right to receive payment.  A claim may be "false" because it contains a false certification of statutory compliance, but only when certification of compliance is a condition of payment.[26]

Here, whether the VA contracted for ADA-compliant residential ramps is material to whether

Homecare made a false claim because Homecare would not be entitled to receive payment for a

residential ramp if the VA contracted for an ADA-compliant ramp and Homecare provided a non-

---

[24]*See id.* at p. 8, ¶ 28.

[25]31 U.S.C. § 3729(a) (emphasis added).

[26]*United States v. N. Am. Construction Corp.*, 173 F. Supp. 2d 601, 624 (S.D. Tex. 2001).

compliant ramp.  Homecare would also not be entitled to payment if a statute required ADA-compliance and Homecare certified that its ramps complied with the statute's requirements.

To show that it did not make a false claim, Homecare presented summary-judgment evidence showing that the VA does not require residential wheelchair ramps to comply with ADA guidelines and does not contract for ramps that comply with ADA guidelines because the requirements for residential ramps are unique.  First, Homecare presented Branch's affidavit.[27] Branch attested that Homecare's contract with the VA does not require ADA-compliant ramps.  He stated that he understood that the ADA applies to public properties—not residential properties—and that he knew of no ADA standards for residential ramps.[28]  He opined that using the ADA guidelines for residential ramps "would be virtually impossible to attain in all instances because of the unique physical conditions existing at an individual home site"[29] because the "location of doors, porches, walkways, driveways and site topography [of residences] all have an impact on the design and installation of a safe and usable ramp."[30]  Branch explained that Homecare tailors its evaluations and bids for VA ramp contracts to each residence and site considerations.[31]  He stated that the VA had communicated its desire that vendors "look to the ADA for guidance in determining many of the qualities of the modular ramps that they install

---

[27]Docket entry # 49, exh. 1.

[28]*Id*.  Branch is correct.  The ADA applies to public accommodations, not private residences.  *See* 42 U.S.C. § 12182(a).

[29]*Id*.

[30]*Id*.

[31]*Id*. at p. 2.

including ramp slope, rail configuration and tread safety,"[32] but that strict compliance with ADA guidelines is not required.[33]  Branch attested that "Homecare does not bill for any items without prior approval and documentation from the VA"[34] of the "unique residential project and site considerations."[35]  This evidence indicates that the premise underlying Osborne's claims—that the VA contracted for ADA-compliant residential wheelchair ramps—is untrue.  Instead of showing that Homecare made false claims based on ramps that do not comply with the VA's contracted standards, it indicates that Homecare bases its bids for residential ramps on the unique requirements of each residence and submits specifications to meet those requirements to the VA for approval.  The evidence shows that no evidence exists of the alleged false claims because the VA did not contract for ADA-compliant ramps.

Homecare also presented an affidavit by Frederick Downs, Jr.  Downs is the Chief of the VA's Office of Prosthetics and Clinical Logistics.  Downs attested that he is familiar with the VA's policies for purchasing residential wheelchair ramps.[36]  Downs attested that the VA does not require residential ramps to comply with the ADA guidelines for wheelchair ramps.[37]  He explained that the ADA is a commercial guideline that is difficult to apply to residences due to

---

[32]*Id*. at p. 3.

[33]*Id*.

[34]*Id*. at p. 3.

[35]*Id*. at p. 2.

[36]Docket entry # 49, exh. 2, p. 1.

[37]*See id*.

10

space constraints and other field conditions.[38]  Downs stated that the VA expects its vendors to

consider the ADA guidelines to assure a safe ramp for the user, but that the VA doesn't require

ramps to meet the ADA guidelines to be considered safe and acceptable for purchase.[39]  He stated

that the contract between the VA and the vendor controls the relationship between the parties and

the products purchased by the VA.[40]  Downs attested that "EZ-ACCESS [Homecare] has not

submitted any false claims for payment to the VA" and that the "VA has no issues regarding the

products or the manner in which EZ-ACCESS bid on furnishing . . . products. . . ."[41]  This

evidence shows that Osborne's allegations are based on a false premise and no evidence exists of

the alleged false claims because the VA did not contract to ADA-compliant ramps.  In the absence

of evidence raising a fact question about whether Homecare made a false claim to the Government,

Homecare is entitled to summary judgment on each of Osborne's claims under the Act.

　　　　Although Osborne sought to raise a fact question about whether Homecare made a false

claim by filing a response,[42] nothing in his proposed summary-judgment evidence would raise a

fact question.  Osborne's proposed summary-judgment evidence included his own affidavit.[43]  In

the affidavit, Osborne attacked Downs's character, characterized Downs's affidavit as perjurious

and misleading, asserted that Downs is not above the law and that Downs has violated his

---

[38]*Id*. at p. 2.

[39]*Id*.

[40]*See id*.

[41]*Id*. at p. 3.

[42]Docket entry # 53.

[43]*See id*., attach. 1, exh. B.

responsibilities to follow the VA's written policies and procedures, accused Downs of conspiring with Homecare to circumvent the VA ramp procurement process, complained that VA personnel have no training in ramp design or construction, asserted superior knowledge about ramp design and construction and VA contracts, and accused the VA of not caring about veteran safety.  In the proposed response, Osborne objected to Downs's affidavit, complaining that Downs does not have personal knowledge of the facts and circumstances of this case because Downs has an office in Washington D.C. and because Downs asserted in a nationally-televised interview that he would feel justified in committing war crimes to get information from prisoners of war.[44]  Unsupported by legal authority, Osborne asserted that ADA-compliance became a term of Homecare's agreement with the VA via Homecare's public representations via its website and brochures.[45]  Osborne complained that Homecare represented its product to the "whole world" as ADA-compliant.  But the alleged representations do not matter if the VA did not contract for ADA-compliant ramps.  Osborne's characterizations are insufficient to raise a fact question about whether Homecare made a false claim.

Osborne also sought to raise a fact question about whether Homecare made a false claim by presenting the VA's handbooks on the VA's policies and procedures for determining a veteran's eligibility for prosthetic services.  Osborne characterizes the handbooks as statutory requirements for ADA-compliance,[46] but the handbooks are not statutes.  Osborne's attempt to establish a false claim based on a false certification of statutory compliance fails because no evidence indicates that

---

[44]*See id*., attach. 1, exh. B., pp. 14-15.

[45]*Id*., attach. 1, p. 6.

[46]*E.g., id*., attach. 1, p. 8.

12

the VA requires compliance with the handbooks as a condition of payment or that the handbooks

are statutes.  Downs attested that the handbooks are not distributed to vendors and explained that

the handbooks are used to guide VA operations.[47]

Osborne sought to raise a fact question about whether Homecare made a false claim by

presenting two Homecare invoices for residential wheelchair ramps.  Without explaining why,

Osborne maintains that these documents show that Homecare misrepresented that its ramps comply

with the ADA.  The first invoice is part of a 13-page document that includes a "EZ-ACCESS

Modular Ramp Quote."[48]  There is a note at the bottom of the quotation form that reads as follows:

"Unless otherwise specified, all ramp systems meet the Americans with Disabilities Act

requirements.  This system is to be used for residential access only.  Please consult your local codes

if commercial access is needed.  EZ-Access is not responsible for any additional local codes that

are above and beyond federal ADA guidelines."  This note probably serves as the basis of

Osborne's assertion that the 13-page document misrepresents that Homecare's ramps comply with

the ADA.  But the note is insufficient to raise a fact question about the material issue—whether the

VA contracted for ADA-compliant residential ramps.  The ramp quote is proposal, not a contract.

The note is a disclaimer, not a certification.  The ramp quote includes a detailed diagram showing

Homecare's design for a ramp for a veteran's home, including building specifications, photos of

the ramp site, and cost.  Nothing on the corresponding invoice submitted to the VA for payment

represents that the actual ramp complies with the ADA's requirements for ramps.

The second document is an 8-page document—similar to the first invoice, but without

_____

[47]Docket entry # 49, exh. 2.

[48]*Id*., attach. 1, exh. A-1.

photos.[49]  The "EZ-ACCESS Modular Ramp Quote" has a similar note.  The note reads as follows:

"It is the responsibility of the dealer to ensure that this is the correct configuration for the

application.  When properly installed EZ-ACCESS ramps fulfill the Americans with Disability Act

requirements.  May not meet the local building code requirements for commercial access.  Consult

local codes."  This note is insufficient to raise a material fact question for the same reasons as the

first document.  Notably, each exhibit includes a VA purchase order directing Homecare to install

the home wheelchair ramp.  Rather than raise a fact question about whether the VA contracted for

ADA-compliant residential ramps, these exhibits support Branch's explanation of the bid process:

Homecare bases its bids for residential ramps on the unique requirements of each residence and

submits specifications to meet those requirements to the VA for approval.  The documents would

not raise a question of material fact.

Osborne sought to raise a fact question about whether Homecare made a false claim by

presenting what he characterizes as an example of a blanket purchase agreement (BPA) clearly

showing that VA contracts for residential ramps require ADA-compliance.[50]  The exemplary BPA

authorizes Texas VA organizations to contract for residential wheelchair ramps during the time

period, March 1, 2005 to September 30, 2005.  Osborne did not explain why the BPA clearly

shows that ADA-compliance is required by VA contracts for residential ramps, but he probably

bases his position on the following language: "The contractor shall provide labor, materials,

equipment, and logistics for building and installing solid surfaced aluminum, non-skid/slip,

modular ramps [sic] systems to accommodate access/egress issues at veterans' residences *in*

---

[49]*Id*., attach. 1, exh A-2.

[50]*Id*., attach. 1, exh. C-1.

14

*accordance with ADA Ramp Designs standards.*"[51]  The BPA requires prospective contractors to

include an environmental assessment in their bids for ramp contracts, for the purpose of

determining "the most appropriate ADA compliant portable modular aluminum ramping system

that meets the patient's access/egress needs."  The BPA instructs prospective contractors that

"[r]amping system shall be installed in accordance with VA authorization."  Read together, these

provisions are reasonably interpreted as requiring prospective contractors to consider the ADA

guidelines in designing a safe wheelchair ramp.  In any event, the BPA does not constitute a

contract between the VA and Homecare or show that the VA contracted with Homecare for an

ADA-compliant wheelchair ramp.  The exemplary BPA does not clearly show that the VA

contracted with Homecare for ADA-compliant wheelchair ramps.

Finally, Osborne sought to raise a fact question about whether Homecare made a false

claim by presenting what he characterizes as an example of a request for quotation (RFQ) clearly

showing that ADA compliance is required by VA contracts.[52]  Oddly, the RFQ is addressed to

Assistive Technology Fabricators—not Homecare—and requests an estimate for an aluminum

wheelchair ramp system.  Nothing in the RFQ specifies ADA-compliance.  The exhibit containing

the RFP includes an unsigned document entitled, "Attachment B, Statement of Understanding and

Release of Liability for Aluminum Ramps Systems."  Although it is impossible to tell how the

document relates to the RFP, the document contains language which Osborne may believe supports

his argument: "The ramp quoted will be the most economical system to meet ADA standards.

Additional footage for cosmetic purposes will not be approved."  This language is insufficient to

---

[51](Emphasis added).

[52]*Id.*, attach. 1, exh. C-2.

raise a question of material fact because it does not indicate that the VA contracted with Homecare for ADA-compliant ramps.  The language, however, supports Downs's explanation of the VA's expectations—the VA expects its vendors to consider the ADA guidelines to assure a safe ramp for the user.

"The standard [for summary judgment] is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record evidence before the court."[53]  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[54]  Here, Homecare and Osborne tell two different stories, but the record blatantly contradicts Osborne's story.  Even viewing Osborne's proposed summary-judgment evidence in the light most favorable to Osborne, a reasonable jury would not believe Osborne's story.  Instead of raising a material fact question, Osborne's arguments and proposed summary-judgment evidence suggests dissatisfaction by a competitor who admittedly went out of business after it lost VA contracts.[55]  Even though Osborne may "feel[] that all ramps that were contracted for to be ADA complaint [sic] should be ADA compliant,"[56] no summary-judgment evidence—filed or proposed—shows a fact question about whether the VA contracted for ADA-

---

[53]*James by James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990).

[54]*Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007).

[55]*See* docket entry # 53, exh 1, p. 2, n.1.

[56]Docket entry # 53, attach. 1, p. 8.

complaint ramps with Homecare.[57]  Homecare is entitled to summary judgment.

**Claims against Clark and American Access**
**and Notice of Sua Sponte Consideration of Summary Judgment**

Osborne's complaint identifies Clark and American Access (together, American Access) as the principal assessor and installer of Homecare's ramp products.[58]  Osborne brought the same claims against Clark and American Access as against Homecare.[59]  The claims against American Access are based on the same premise as the claims against Homecare—that the VA contracted for ADA-compliant wheelchair ramps.[60]  Because Homecare's summary-judgment evidence shows that the VA does not contract for ADA-complaint residential ramps and because American Access installs Homecare ramps, it would appear that American Access is also entitled to summary judgment because no evidence exists of a false claim.  Consequently, the court is considering summary judgment in favor of American Access.

Ordinarily, a court may not enter summary judgment in the absence of a written motion.[61]  But summary judgment is permitted in the absence of a written motion if a written motion is unnecessary and the parties have adequate notice and an opportunity to be heard.[62]  Osborne should

---

[57]*Id*. at p. 8.

[58]Docket entry # 43, p. 4, ¶ 12.

[59]*See id*. at p. 27, ¶ 2.

[60]*See id*. at p. 6, ¶ 19; p. 10,  ¶ 32 & p. 24-25, ¶ 72.

[61]*See* FED. R. CIV. P. 56 (providing for motions for summary judgment); *Matter of Hailey*, 621 F.2d 169, 171 (5th Cir. 1980) (observing that Rule 56 does not indicate that a judge may render a summary judgment sua sponte).

[62]*See Matter of Hailey*, 621 F.2d at 171 (explaining that a party must be timely served and given an opportunity to respond and present summary judgment evidence).

17

consider this order as notice that I have seen no evidence that raises a fact question about whether American Access made a false claim and I am considering summary judgment in favor of American Access.  Because the Local Court Rules for this district give a party 11 days from service a motion to respond, I will give Osborne 11 days from service of this order to present any argument and/or documentary evidence that may preclude summary judgment on his claims.  If Osborne fails to respond to this order by that time, I will enter summary judgment in favor of American Access and enter a final judgment in this case.

**Court's Orders**

I grant Homecare's motion for summary judgment (docket entry # 49) and enter summary judgment in favor of defendants Homecare Products, Don Everard, Geleda Everald, and Deanne Sondvold, and against plaintiff James Osborne.  The deadline for Osborne to file any summary-judgment evidence of a false claim by defendants American Access and Brian Clark is 11 days from service of this order.

**SIGNED** on May 29, 2008.


*Nancy Stein Nowak*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE